This is an action for actionable negligence, brought by plaintiff against defendant. The defendant denied negligence and set up a plea of contributory negligence. *Page 286 
The defendant testified, in part: "I am the plaintiff in this action, and live near Hobgood. I was injured on 8 April, 1930. . . . Was hurt on the highway. I was on my way home and passed the defendant, his car was standing on the road and I approached him and said, `It looks like you are in trouble. Can I do anything for you?' He had a flat tire. He asked me to help him and said he would pay me. I told him I would try to do what he told me. He told me to try to jack up the frame and he had two jacks and I jacked up the frame and when I jacked up the wheel it fell on my chest. I was under the automobile when it fell on me. I have helped jack up automobiles, but I had never been under one. He asked me to go under the car and jack up the axle so he could get the wheel off. He had two jacks. I jacked one under the frame of the car and went under there to jack it up so he could get the wheel off and it fell. Mr. McIver was standing on the outside when it fell. I jacked up the frame before I went under the car and then went under there to jack up the axle so he could get the wheel off. It was the rear right wheel. The axle fell right across my breast. It moved somehow or other. I was under the rear of the car right under the axle. I was not under the middle of the axle and not right at the end of it. Mr. McIver was on the outside. He got it off of me as quick as he could. The car was on the jack under the frame when I went under it. I went under the car and placed the jack under the axle and jacked it some more. There was one jack on the outside and one under the car. Mr. McIver got the wheel off while I was under the car. Q. State whether or not that is what made the car fall on you? A. I was under there and I think that is how come it to fall. The car fell when he pulled the wheel off. I was badly hurt. (Cross-examination.) when he pulled it off it fell on me. . . . Q. You knew before you got under there that if the thing fell down you would get hurt? A. I didn't have any idea it would fall. Q. You don't say Mr. McIver thought it would fall? A. I don't think he did. Q. How hard do you say he pulled on the wheel? A. I don't know. Hard enough to pull it off. . . . One jack was not as good as the other. The sorry jack was the one under the axle, under there where I was. I think that is the one I had. I had the onethat wouldn't half hold under there. I didn't know it wouldn't half holduntil I was under there. . . . I kept on jacking it up. Q. Knowing it might fall down? A. If he had not snatched the wheel off it would not have moved. Q. You say you don't know how hard he was pulling it? A. No, sir. He snatched it hard enough to get it off."
Dr. E. E. Pittman testified, in part: "I know George Miles. I treated him for a chest injury. He came to me fifteen or twenty minutes after *Page 287 
the accident occurred. I did not have access to an X-ray, but I found possibly three or four ribs broken. . . . He spat up blood for the time I was taking care of him and I saw him myself expectorate blood. The injury was caused from the force or weight of the car falling on him. Q. State whether or not he was injured internally? A. I know he had broken ribs and from the fact that he was expectorating blood, we would expect some internal injury."
Sheriff Roebuck testified: "I know George Miles. Know his general character and reputation. It is as good as the average darkey."
John Hines testified: "I know George Miles. Have known him 8 or 10 years. He lives close to me. I know his general character and reputation. It is good."
The issues submitted to the jury and their answers thereto, were as follows:
"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? A. Yes.
2. What damage, if any, is plaintiff entitled to recover therefor? A. $1,510."
The defendant introduced no evidence, and at the close of plaintiff's evidence made a motion for judgment as in case of nonsuit. C. S., 567. The motion was overruled and in this we can see no error.
We can see no evidence on this record of contributory negligence on the part of plaintiff. The exceptions and assignments of error on the part of defendant cannot be sustained. The answer of Sheriff Roebuck "it is as good as the average darkey," is not prejudicial. A witness, Hines, testified stronger "I know his general character and reputation, it is good." We see nothing objectionable in the charge of the court below, it fully complies with C. S., 564.
The defendant argued the case and filed an able brief, followed by counter-brief. On this record his contentions cannot be sustained. The evidence on the part of plaintiff we think fully sufficient to be submitted to the jury. It was a question of fact for a jury, and in law we find
No error. *Page 288